**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CROSSBORDER SOLUTIONS, INC. and CROSS BORDER TRANSACTIONS, LLC d/b/a CROSSBORDER SOLUTIONS, <br><br> Plaintiffs, <br><br> -against- <br><br> LIGA HOY, JIAXIN "CLAIRE" SONG, and LIJUN "MAGGIE" TIAN, <br><br> Defendants. | Case No. 20-cv-_____ <br><br><br> **COMPLAINT** |

Plaintiffs CrossBorder Solutions, Inc. and Cross Border Transactions, LLC *d/b/a* CrossBorder Solutions (collectively, "CrossBorder" or the "Company"), by and through its undersigned counsel, for their Complaint against Defendants Liga Hoy ("Hoy"), Jiaxin "Claire" Song ("Song"), and Lijun "Maggie" Tian ("Tian," together with Hoy and Song, "Defendants"), allege as follows:

**FACTUAL BACKGROUND**

1.      This action seeks injunctive relief and damages for the calculated and carefully orchestrated misappropriation of CrossBorder's trade secrets by three former employees, and for their collective breaches of their confidentiality and, as applicable, non-solicitation and non-competition contractual obligations.  Defendant Hoy, who was the instigator of the scheme, is also sued for her tortious interference with the contracts of the other two Defendants with CrossBorder.

2.      CrossBorder is a global leader in providing technology-driven tax solutions to companies through cutting-edge transfer pricing software.  Following the expenditure of hundreds

of thousands of hours and over $20 million to develop its technology and customer base, CrossBorder has now successfully created a niche market for such services, competing effectively with the world's leading accounting firms.

3.      As detailed below, as part and parcel of their prior employment at CrossBorder, Defendants were afforded access to highly confidential CrossBorder and customer-generated information.  This included, for example, CrossBorder's client work product, client proposals, current and potential client lists, and detailed information about client current and future needs and internal corporate structures (the "Confidential Information").  Defendants were key participants in CrossBorder's sales efforts and therefore, had sweeping access, in particular, to sales prospect information, including client proposals.

4.      Months prior to the termination of her employment from CrossBorder, Defendant Hoy had already begun orchestrating a group defection from CrossBorder, with Defendants Song and Tian, to create a competing business. While still employed by CrossBorder, Defendant Hoy, in fact, solicited numerous other CrossBorder employees to leave CrossBorder and join her.

5.      When CrossBorder discovered that Defendant Hoy was soliciting CrossBorder employees to leave the Company with her, her employment was terminated on January 17, 2020. That very same day, Defendant Hoy then quickly accessed CrossBorder's client list, downloaded CrossBorder Confidential Information to a personal drive, and asked Defendants Song and Tian to collect even more.

6.      Defendant Hoy thereafter expressly solicited Defendants Song and Tian to breach their CrossBorder contracts and join her at her new employer, a CrossBorder competitor, Macias Gini & O'Connell LLP ("MGO").

4828-1241-5936

7.     Defendants Song and Tian ultimately did just that, resigning from CrossBorder to join MGO.

8.     Now, armed with their detailed knowledge of CrossBorder Confidential Information, Defendants Hoy, Song and Tian are actively soliciting CrossBorder clients — clients whose identities they would never have even know but for the Confidential Information shared with them by CrossBorder — to end their relationships with CrossBorder and follow Defendants to MGO.

9.     These actions threaten disastrous consequences for CrossBorder, with the potential to decimate its customer base and sales pipeline.

10.     Therefore, to preserve the status quo, and prevent the deliberate destruction of its core business, CrossBorder now seeks immediate injunctive relief:  (1) enjoining Defendants Hoy, Song and Tian, and all persons acting in concert with or through them who receive actual notice of the injunction, from disclosing or using CrossBorder Confidential Information; (2) enjoining Defendants Hoy, Song and Tian from breaching their confidentiality obligations contained in their respective Employment Agreements with CrossBorder; (3) enjoining Defendants Song and Tian from breaching their non-solicitation and non-competition contractual obligations contained in their respective Employment Agreements with CrossBorder with respect to all customers and potential future customers on CrossBorder's customer or prospect lists; and (4) enjoining Defendant Hoy, and all persons acting in concert with or through her who receive actual notice of the injunction, from tortiously interfering with Defendants Song and Tian's contracts with CrossBorder and with any other CrossBorder employees' contracts with CrossBorder

4828-1241-5936

## PARTIES

11.    Plaintiff CrossBorder Solutions, Inc. is a Delaware corporation with its principal place of business in Tarrytown, New York.  It is a global leader in providing technology-driven tax solutions through cutting-edge transfer pricing software, from its physical offices in Tarrytown, New York, New York City, London and Argentina, and through employees working remotely elsewhere.  CrossBorder Solutions, Inc. is the parent company of plaintiff Cross Border Transactions, LLC.

12.    Plaintiff Cross Border Transactions, LLC *d/b/a* CrossBorder Solutions is a Delaware limited liability company with its principal place of business in Tarrytown, New York. Cross Border Transactions, LLC, a subsidiary of plaintiff CrossBorder Solutions, Inc., was the former employer of the three Defendants.

13.    Upon information and belief, Defendant Hoy is a resident of San Rafael, California, who was employed as a Senior Economist at CrossBorder from September 2018 until January 17, 2020.  During the term of her employment, Defendant Hoy regularly visited the CrossBorder offices in New York.

14.    Upon information and belief, shortly after the January 17, 2020, termination of her employment at CrossBorder, Defendant Hoy began working for MGO as Leader of National Transfer Pricing and Managing Director of Tax Practice.  MGO, upon information and belief, is a limited liability partnership organized and existing under the laws of the State of California, with its principal place of business in Sacramento, California, and with offices in many parts of the country, including multiple offices in New York.

15.    Upon information and belief, Defendant Song is now a resident of Framingham, Massachusetts, who was employed as a Transfer Pricing Senior Analyst at CrossBorder's

4

Tarrytown, New York office from March 20, 2018 until June 9, 2020.  Upon information and belief, shortly thereafter, Defendant Song began working for MGO.

16.    Upon information and belief, Defendant Tian is a resident of Tenafly, New Jersey, who was employed as a Transfer Pricing Manager at CrossBorder's Tarrytown, New York office from September 12, 2018 until April 15, 2020.  Upon information and belief, Defendant Tian shortly thereafter began working for MGO.

## <u>JURISDICTION AND VENUE</u>

17.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a) because there is complete diversity between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This Court also has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because the action arises under the Defend Trade Secrets Act of 2016, 18 USC § 1836, *et seq.*

18.    The Court has supplemental jurisdiction over the state law claims alleged here in pursuant to 28 U.S.C. § 1367.

19.    This Court has personal jurisdiction over Defendants pursuant to CPLR § 302(a)(1)-(3) because Defendants Hoy, Song and Tian each transacted business within the State of New York and each committed tortious acts within the State of New York that caused injury to Plaintiff in New York.

20.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred within this judicial district.

4828-1241-5936

## FACTUAL ALLEGATIONS

### CrossBorder's Business

21.    Founded in 2016, CrossBorder is now a global leader in technology-driven tax solutions that have taken the accounting industry by storm.  CrossBorder produces and licenses its computer software "as a service."  That software uses proprietary artificial intelligence and a cloud-based user interface to help businesses maximize their tax efficiency through transfer pricing compliance mechanisms.

22.    Transfer pricing refers to the rules and methods for pricing transactions within and between businesses under common ownership or control, such as between subsidiary and parent entities.  CrossBorder has achieved a breakthrough for clients in transfer pricing compliance through a cloud-based software platform that relies on artificial intelligence to conduct hyper-localized studies to anticipate tax audits and prevent adjustments and penalties.

23.    These transfer pricing accounting techniques benefit only a very limited clientele. A small percentage of companies throughout the world have a need for transfer pricing services like those offered by CrossBorder and its competitors.  Finding those companies is therefore akin to finding the proverbial needle in a haystack.

24.    CrossBorder's innovative techniques therefore must be coupled with strategic sales strategies to build a market for such transfer pricing accounting services.

25.    CrossBorder must spend significant time, effort and money to identify its prospects and customers.  The Company employs 45 people full time who work solely on identifying clients and selling software and services to that discrete market.  CrossBorder's marketing team makes approximately 5,000 phone calls per day, or 100,000 calls per month, to identify, on average, just 50 new customers per month.

6

26.     CrossBorder's sales and marketing operations cost the Company approximately $750,000 per month.

27.     In total, CrossBorder has expended over $20 million to develop its technology and customer base.

28.     CrossBorder's customer and prospect lists cannot be obtained through publicly available sources.  They are the end result of the Company's specialized knowledge of the industry and sophisticated marketing efforts.

29.     CrossBorder undertakes considerable efforts to maintain the secrecy of its Confidential Information, including but not limited to, restricting access to the Confidential Information only to certain personnel, storing the Confidential Information on encrypted drives, and having its employees agree to confidentiality, non-compete and non-solicit restrictive covenants.

30.     CrossBorder also provides its employees with Company-issued laptops and mobile phone technology to further protect its Confidential Information.

**Hoy, Song and Tian Join CrossBorder**

31.     Defendant Hoy first began working for CrossBorder on September 17, 2018 as a Senior Economist.  She was previously self-employed, trying to create her own consulting company that specialized in transfer pricing compliance. She was unable, however, to identify sufficient clients to build that business.

32.     In her role as Senior Economist, Defendant Hoy was the most senior industry expert at the Company and the most senior manager on client projects.  She was responsible for managing client relationships, supervising a team of analysts, and approving final work product.

4828-1241-5936

Furthermore, shortly before her employment was terminated, she had been given responsibility for the Company's entire client base, rather than just a subset.

33.    As part of her Senior Economist role, Defendant Hoy regularly provided clients sophisticated tax advice.  She also played a large role in the Company's sales efforts, solidifying the Company's relationships with prospects, and identifying upselling opportunities with existing clients.

34.    While working for CrossBorder, Defendant Hoy made monthly visits to CrossBorder's Tarrytown, New York Office, where she would regularly meet with her team and with CrossBorder senior executives.

35.    Defendant Tian also began working for CrossBorder on September 17, 2018, as a Transfer Pricing Manager in CrossBorder's Tarrytown, New York office.  Defendant Tian was later promoted to Senior Manager.  In that role, Defendant Tian worked directly with clients and completed client work product, while supervising junior analysts and Defendant Song. Defendant Tian reported directly to Defendant Hoy.  Defendant Tian also assisted with sales efforts by speaking with sales prospects.

36.    Defendant Song began working for CrossBorder on July 2, 2018 as a Transfer Pricing Senior Analyst in CrossBorder's Tarrytown, New York office.  Defendant Song was later promoted to Manager.  In that role, Defendant Song worked directly with clients and completed client work product while supervising junior analysts.  Defendant Song originally reported directly to Defendant Tian. Upon her promotion to Manager, Defendant Song then reported directly to Defendant Hoy.

**Defendants' Employment Agreements**

37.    As a condition of each of their employment at CrossBorder, Defendants Hoy, Song and Tian each entered into Employment Agreements with CrossBorder, dated September 11, 2018, March 20, 2018 and September 12, 2018, respectively (collectively, the "Employment Agreements," attached hereto as Exhibits A.1-A.3).  In their Employment Agreements, Defendants each agreed, *inter alia*, to the provisions detailed below regarding confidentiality, non-solicitation and non-competition obligations, both during and after their employment at CrossBorder. The three Employment Agreements are identical in these respects.

38.    *First,* Defendants "acknowledged and agree[d]" in their respective Employment Agreements that their "employment necessitates access to and knowledge of confidential information that is proprietary to and/or a trade secret of the Company,"  the disclosure of which an "existing or potential competitor would place the Company at a competitive disadvantage and [] damage the Company's business."  Employment Agreements § 6.  Defendants further agreed to maintain CrossBorder's non-public information confidential "during [their] employment and thereafter," specifically agreeing not to:

> [U]se such information for your own benefit or to reveal, report, publish, disclose or transfer, directly or indirectly, any Confidential Information to any person or entity, or to utilize any Confidential Information for any purpose, except in the course of your work for the Company.

*Id.* § 6(b).

39.    CrossBorder's confidential information is, in turn, defined to include:

> [C]ustomer lists, lists of prospective customers and acquisition targets, marketing and business plans, business or technical needs of customers, consultants, licensees or suppliers and their methods of doing business, arrangements with customers . . . .

*Id.*

4828-1241-5936

40.    *Second*, Defendants agreed in their Employment Agreements that, during their employment at CrossBorder and for two years following termination of their employment, they would not:

> (a) . . . directly or indirectly, solicit or hire any employee of the Company or its affiliates or induce any employee of the Company or its affiliates to leave the Company.
>
> (b) . . . directly or indirectly, solicit the business of any customer or potential customer or persuade any customer or potential customer to cease doing business with CrossBorder.

*Id.* § 7(a)-(b).

41.    *Third,* Defendants agreed in their Employment Agreements that, during their employment at CrossBorder and for one year thereafter, they would not be "involve[d] (whether as an employee, proprietor, consultant, director, officer, member, owner, partner or otherwise) with any person or entity (including any company together with its affiliates) engaged in any business activity which is materially competitive with the Company . . . ." *Id.* § 8.

42.    In Section 8 of the Employment Agreements, Defendants agreed that these Restrictive Covenants were "reasonable and necessary to protect and preserve the interests, properties, and business of the Company, and that irreparable loss and damage will be suffered by the Company should [they] breach any of such covenants." *Id.*

43.    The Employment Agreements also provided that, in the event of a breach of the restrictive covenants, CrossBorder could enforce them specifically by injunction "without the necessity of proving the inadequacy of monetary damages or the posting of any bond or security." *Id.* § 10.

4828-1241-5936

**Defendant Hoy Takes Confidential Information Which Defendants then Use to Solicit CrossBorder Clients**

44.     Throughout their employment at CrossBorder, Defendants had wide access to CrossBorder Confidential Information -- including but not limited to CrossBorder's client work product, client proposals, prospect proposals, lists of current and potential future clients, and information about client current and future needs.   Defendants' roles with the Company necessitated their access to this Confidential Information.

45.     As part of its contracts with clients, CrossBorder serves as a comprehensive transfer pricing advisor to its clients, and also provides its clients with consulting services in areas outside its core business of transfer pricing compliance.   CrossBorder employees, including Defendant Hoy, were expected to provide these ancillary services to clients upon request.

46.     Before 2019, the Company charged clients for these ancillary projects, termed "upsell" work.   The Company stopped separately charging clients for upsell work in November 2019 when it adjusted its license pricing and terms.

47.     Upon information and belief, in or around Spring 2019, Defendants Hoy, Song and Tian began discussing building their own consulting company and competing with CrossBorder. Upon information and belief, Defendant Hoy specifically began identifying CrossBorder clients who presented upsell opportunities for paid consulting work.

48.     Upon information and belief, Defendant Hoy then started to solicit these clients for upsell business by creating her own proposals outside of the Company's normal sales process, without Company approval or knowledge.   When the Company learned of this unauthorized activity, Defendant Hoy was reprimanded.

49.     On December 18, 2019, CrossBorder distributed a memo to its employees explaining that CrossBorder was restructuring its internal transfer pricing practices so that the most

4828-1241-5936

senior transfer pricing experts in the Company would no longer each be solely responsible for a specific group of clients but, instead, would be responsible for scoping the client engagement, and reviewing and delivering final work product, for all CrossBorder clients.

50.     Following receipt of that memo, we now know that Defendant Hoy actively began planning her departure from CrossBorder.  The very next day, December 19, 2019, she apparently began visiting job recruiter websites.  Later that night, upon information and belief, she took her team of analysts (including Defendants Song and Tian and other CrossBorder employees) out to dinner in New York, and expressly encouraged them to leave CrossBorder with her.

51.     Over the next month, we now know that Defendant Hoy repeatedly accessed CrossBorder Confidential Information, including CrossBorder customer lists.  She also viewed documents detailing Defendants Song's and Tian's "pipeline" of potential clients.

52.     In or around late December 2019 or early January 2020, CrossBorder senior management learned that Defendant Hoy was soliciting CrossBorder employees to leave the Company, prompting a decision to terminate Defendant Hoy's employment the next time she was in the New York office.

53.     On January 17, 2020, Defendant Hoy's employment was terminated in CrossBorder's New York, New York Office.

54.     Immediately thereafter, Defendant Hoy again accessed a CrossBorder file called "Upsell Opportunities," downloading it onto a thumb drive, together with other documents regarding Company customers.  That Upsell Opportunities file, upon information and belief, included consulting work opportunities obtained by CrossBorder that Hoy sought to monetize for her personal economic gain.

4828-1241-5936

55.     Upon information and belief, on January 27, 2020 Defendant Hoy reached out to Defendant Song and asked her to send her a picture of the December 18, 2019 memorandum regarding CrossBorder's internal restructuring.  Defendant Hoy said that the purpose of her request was to determine whether CrossBorder's decision to take away her direct client ownership for certain clients enabled her to now solicit such clients for business, as she had an opportunity with a CrossBorder competitor.  Defendant Hoy expressly noted in her text messages that there were Manager positions in New York as well for Defendant Song.

56.     Defendant Hoy knew that her request was improper, specifically stating in a text to Defendant Song that she "understood" if Defendant Song was uncomfortable with providing her a picture of the memo.

57.     Soon thereafter, Defendant Hoy began working for MGO as Leader of National Transfer Pricing and Managing Director of Tax Practice.

58.     Defendant Tian resigned from CrossBorder on April 15, 2020, and thereafter joined Defendant Hoy at MGO's transfer pricing tax practice.

59.     Defendant Song resigned from CrossBorder on June 9, 2020, and, upon information and belief, was also recently hired by MGO in its transfer pricing tax practice.

60.     On June 18, 2020, a CrossBorder client informed CrossBorder that both Defendants Hoy and Tian had repeatedly contacted them to solicit business.  The client also informed CrossBorder that it had received a communication from MGO announcing Defendants Hoy and Song's arrival at MGO.

61.     Upon information and belief, Defendants Hoy, Song and Tian have contacted and continue to contact other CrossBorder clients to solicit their business and induce them to terminate their relationships with CrossBorder.

4828-1241-5936

62.     On February 14, 2020, CrossBorder sent a letter to Defendant Hoy demanding that she immediately return all Company property in her possession, including any customer lists, customer contact information, the Upsell Opportunities files and any customer proposals, and refrain and immediately cease and desist from any usage or disclosure of the Company's confidential, proprietary and/or trade secret information.

63.     Defendant Hoy never returned any of the property she misappropriated from CrossBorder.

64.     After learning that Defendant Hoy had solicited Defendants Song and Tian to both leave CrossBorder, and after being contacted by a customer indicating that Defendants had solicited their business, CrossBorder sent cease and desist letters to all three Defendants on June 19, 2020.  In those letters, CrossBorder demanded that Defendants cease and desist from using CrossBorder's confidential, proprietary and/or trade secret information, honor their contractual obligations with CrossBorder, and confirm in writing that they were doing so. With respect to Defendant Hoy, CrossBorder further demanded that she immediately desist from further tortiously interfering with Defendants Song and Tian's ongoing contractual obligations to CrossBorder.

65.     The June 19th cease and desist letters generated no substantive responses nor any of the written assurances requested.  This action now follows.

## FIRST CAUSE OF ACTION
### *Breach of Contract (against all Defendants)*

66.     CrossBorder repeats and realleges paragraphs 1-65 as if fully set forth herein.

67.     Defendants and CrossBorder entered into Employment Agreements pursuant to which Defendants were employed by CrossBorder.

14

68.    The Employment Agreements constitute valid and fully enforceable agreements, except that the post-employment non-competition restrictions in Defendant Hoy's agreement are unenforceable under the law of California, where she resides.

69.    Defendant Hoy's employment relationship with CrossBorder ended on January 17, 2020 when her employment was terminated.

70.    Defendants Song and Tian's employment relationship with CrossBorder ended on June 9, 2020 and April 15, 2020, respectively.

71.    Defendants have all breached their respective Employment Agreements by using CrossBorder Confidential Information, specifically, their knowledge of CrossBorder's client lists, to poach and/or attempt to poach CrossBorder's existing and prospective customers, in competition with CrossBorder, as MGO employees.

72.    Defendant Hoy further breached her Employment Agreement by downloading CrossBorder Confidential Information from CrossBorder's server that stores electronic data, to her personal thumb drive.

73.    Defendant Hoy also breached her Employment Agreement by soliciting Defendants Song and Tian to leave CrossBorder, even while Defendant Hoy was still a CrossBorder employee.

74.    CrossBorder performed all conditions, covenants, and promises required by the terms and conditions of the Employment Agreements.

75.    CrossBorder has been damaged in an amount in excess of $75,000, and is still being damaged, by Defendants' contract breaches, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### *Tortious Interference with Contract (against Hoy)*

76.    CrossBorder repeats and realleges paragraphs 1-75 as if fully set forth herein.

77.    CrossBorder has valid and enforceable contracts, the Employment Agreements, with Defendants Song and Tian.

78.    Defendant Hoy had full knowledge of the existence of the Employment Agreements between CrossBorder and Defendants Tian and Song.

79.    Despite knowledge of those contracts, Defendant Hoy tortiously interfered with those contracts by soliciting Defendants Tian and Song to join her at MGO and target CrossBorder customers and otherwise compete with CrossBorder.

80.    Defendant Hoy also interfered with other CrossBorder employees' respective employment agreements by soliciting them to leave CrossBorder while Defendant Hoy was still a CrossBorder employee.

81.    Defendant Hoy's acts were intentional and conducted with the purpose of interfering with CrossBorder's agreements with Defendants Song and Tian and other CrossBorder employees.

82.    CrossBorder had business relationships with the companies on its confidential client list and with those clients with whom Defendant Hoy interacted during her employment with CrossBorder.

83.    Defendant Hoy, knowing of those relationships, is intentionally interfering with those relationships by attempting to induce clients to terminate their relationships with CrossBorder in favor of relationships with Defendant Hoy's current employer, MGO.

84.    Upon information and belief, Defendant Hoy has contacted and continues to contact other CrossBorder clients to solicit their business and to induce them to terminate their relationships with CrossBorder.

4828-1241-5936

85.     As a direct result of Defendant Hoy's tortious interference, CrossBorder has been, and is still being, damaged in an amount in excess of $75,000 to be determined at trial.

86.     Defendant Hoy has acted in an egregious, malicious, willful and wanton manner, and in bad faith when committing the acts alleged above.  As a result, CrossBorder is also entitled to punitive damages.

87.     CrossBorder has suffered irreparable harm as a result of Defendant Hoy's conduct and will continue to suffer irreparable harm that cannot be adequately redressed at law, unless she is enjoined from engaging in any such further conduct.

## THIRD CAUSE OF ACTION
### *Misappropriation of Trade Secrets and Confidential and Proprietary Information*
### *(against all Defendants)*

88.     CrossBorder repeats and realleges paragraphs 1-87 as if fully set forth herein.

89.     CrossBorder possesses trade secrets and confidential and proprietary information, specifically including CrossBorder's current and potential future client lists.

90.     Those trade secrets and that confidential and proprietary information give CrossBorder a significant advantage over its competitors, an advantage that would be lost if such trade secrets and confidential and proprietary information became known to CrossBorder's competitors.

91.     The trade secrets and confidential and proprietary information derive independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use.

92.     CrossBorder has made reasonable efforts under the circumstances to protect the confidentiality of the trade secrets and confidential and proprietary information, including designating certain information as confidential, requiring employees to sign confidentiality

agreements, restricting access to such information, safeguarding such information with encryptions, and providing Company-issued computers and mobile phone technology to employees to ensure that CrossBorder confidential information remains on CrossBorder devices and networks.

93.    Defendants had knowledge of, and access to, CrossBorder's trade secrets and confidential and proprietary information.

94.    Defendants were and remain under a duty to keep CrossBorder's trade secrets and confidential and proprietary information confidential and not to use, exploit or divulge such information, other than for the benefit of CrossBorder and with its authorization.

95.    Defendants misappropriated CrossBorder's trade secrets and confidential and proprietary information for their own gain, without regard to CrossBorder's rights, and without compensation, permission, or license from CrossBorder.

96.    Defendants' conduct was and remains willful and wanton, in bad faith and with blatant disregard for CrossBorder's valid and enforceable rights.

97.    Defendant Hoy has not returned CrossBorder's confidential and proprietary information and trade secrets, despite request for such return.

98.    As a result of Defendants' conduct, CrossBorder has been, and is still being, damaged in an amount in excess of $75,000 to be determined at trial.

99.    CrossBorder has suffered irreparable harm as a result of Defendants' conduct and will continue to suffer irreparable harm that cannot be adequately redressed at law, unless they are enjoined from engaging in any such further conduct.

**<u>FOURTH CAUSE OF ACTION</u>**
*Violation of The Defend Trade Secrets Act, 18 U.S.C. 1836 et seq. (against all Defendants)*

100.    CrossBorder repeats and realleges paragraphs 1-99 as if fully set forth herein.

101.    CrossBorder possesses trade secrets including CrossBorder's current and potential future client lists.

102.    The trade secrets give CrossBorder a significant advantage over its competitors, an advantage that would be lost if such trade secrets became known to CrossBorder's competitors.

103.    The trade secrets derive independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use.

104.    CrossBorder has made reasonable efforts under the circumstances to protect the confidentiality of its trade secrets, including designating certain information as confidential, requiring employees to sign confidentiality agreements, restricting access to such information, safeguarding such information with encryptions, and providing Company-issued computers and mobile phone technology to employees to ensure that CrossBorder confidential information remains on CrossBorder devices and networks.

105.    Defendants had knowledge of, and access to, CrossBorder's trade secrets.

106.    Defendants were and remain under a duty to keep CrossBroder's trade secrets confidential and not to use, exploit or divulge such information other than for the benefit of CrossBorder and with its authorization.

107.    Defendants misappropriated CrossBorder's trade secrets for their own gain, without regard to CrossBorder's rights, and without compensation, permission, or license from CrossBorder.

108.    Defendants' conduct was and remains willful and wanton, in bad faith and with blatant disregard for CrossBorder's valid and enforceable rights.

4828-1241-5936

109.    Defendant Hoy has not returned CrossBorder's trade secrets despite CrossBorder's request for such return.

110.    As a result of Defendants' conduct, CrossBorder has been, and is still being, damaged in an amount in excess of $75,000 to be determined at trial.

111.    CrossBorder has suffered irreparable harm as a result of Defendants' conduct and will continue to suffer irreparable harm that cannot be adequately redressed at law, unless they are enjoined from engaging in any such further conduct.

## FIFTH CAUSE OF ACTION
### *Breach of Common Law Duty of Loyalty (against all Defendants)*

112.    CrossBorder repeats and realleges paragraphs 1-111 as if fully set forth herein.

113.    As former employees of CrossBorder, Defendants Hoy, Song and Tian owe a continuing duty of loyalty to CrossBorder not to use CrossBorder's trade secrets and confidential and proprietary information that they acquired during their employment with CrossBorder to their own advantage or to the advantage of their new employer, MGO.

114.    Defendant Hoy also owed a duty of loyalty to CrossBorder while she was a CrossBorder employee to not solicit employees to leave their employment with CrossBorder.

115.    Defendant Hoy breached her duty of loyalty in soliciting Defendants Song and Tian and other CrossBorder employees to leave their employment with CrossBorder and join together to compete with it, while she was still employed by CrossBorder.

116.    Defendants breached their respective duties of loyalty by soliciting CrossBorder clients and using the Confidential Information to poach CrossBorder's existing and prospective customers.

117.    CrossBorder has been, and is still being, damaged by Defendants' breaches of their duties of loyalty, in an amount in excess of $75,000 to be determined at trial.

## SIXTH CAUSE OF ACTION
### *Conversion (against all Defendants)*

118.    CrossBorder repeats and realleges paragraphs 1-117 as if fully set forth herein.

119.    Defendants' unauthorized exercise of the right of ownership of CrossBorder's trade secrets and confidential and proprietary information constitutes conversion.

120.    Defendants wrongfully took and maintain possession of CrossBorder's trade secrets and confidential and proprietary information, including its client lists, for Defendants' potential use in a competing business.

121.    As a consequence of the foregoing, CrossBorder has suffered and will continue to suffer irreparable harm unless Defendants are enjoined from possessing and using CrossBorder's trade secrets and confidential and proprietary information, including its client lists, and the same is returned to CrossBorder.

122.    CrossBorder has been, and is still being, damaged as a result of Defendants' conversion, in an amount in excess of $75,000 to be determined at trial.

## SEVENTH CAUSE OF ACTION
### *Injunctive Relief (against all Defendants)*

123.    CrossBorder repeats and realleges paragraphs 1-122 as if fully set forth herein.

124.    As alleged above, Defendant Hoy intentionally and wrongfully downloaded CrossBorder Confidential Information, which contained trade secrets and confidential and proprietary information, to a thumb drive, while under contract with CrossBorder.

125.    Defendants solicited and continue to solicit CrossBorder clients and use Confidential Information to poach CrossBorder's existing and prospective customers and to directly compete with CrossBorder as MGO employees.

4828-1241-5936

126.    Defendants also wrongfully took and maintain possession of CrossBorder trade secrets and confidential and proprietary information.

127.    CrossBorder therefore seeks preliminary and permanent injunctive relief against Defendants: (1) enjoining Defendants Hoy, Song and Tian, and all persons acting in concert with or through them who receive actual notice of the injunction, from disclosing or using CrossBorder Confidential Information; (2) enjoining Defendants Hoy, Song and Tian from breaching their confidentiality obligations contained in their respective Employment Agreements with CrossBorder; (3) enjoining Defendants Song and Tian from breaching their non-solicitation and non-competition contractual obligations contained in their respective Employment Agreements with CrossBorder with respect to all customers and potential future customers on CrossBorder's customer or prospect lists; and (4) enjoining Defendant Hoy, and all persons acting in concert with or through her who receive actual notice of the injunction, from tortiously interfering with Defendants Song and Tian's contracts with CrossBorder and with any other CrossBorder employees' contracts with CrossBorder.

128.    CrossBorder has no adequate remedy at law as to this claim. CrossBorder cannot be compensated adequately for injuries by an award for damages if Defendants improperly use, maintain, or transmit CrossBorder Confidential Information to or for the benefit of anyone other than CrossBorder.  Moreover, Defendants likely lack the resources to compensate CrossBorder for the harm they are causing.

129.    Defendants' intentional and wrongful conduct, as described above, unless and until enjoined and restrained by order of this Court, will disrupt the status quo and will cause great and irreparable injury to CrossBorder.

130.    Accordingly, CrossBorder seeks injunctive relief as set forth above.

4828-1241-5936

## PRAYER FOR RELIEF

WHEREFORE, CrossBorder respectfully requests that the Court enter judgment in favor of CrossBorder and against Defendants, awarding CrossBorder:

(a) Compensatory damages in an amount to be determined at trial;

(b) Punitive damages in an amount to be determined at trial;

(c) Preliminary and permanent injunctive relief:

(1) enjoining Defendants Hoy, Song and Tian, and all persons acting in concert with or through them who receive actual notice of the injunction, from disclosing or using CrossBorder Confidential Information;

(2) enjoining Defendants Hoy, Song and Tian from breaching their confidentiality obligations contained in their respective Employment Agreements with CrossBorder;

(3) enjoining Defendants Song and Tian from breaching their non-solicitation and non-competition contractual obligations contained in their respective Employment Agreements with CrossBorder with respect to all customers and potential future customers on CrossBorder's customer or prospect lists; and

(4) enjoining Defendant Hoy, and all persons acting in concert with or through her who receive actual notice of the injunction, from tortiously interfering with Defendants Song and Tian's contracts with CrossBorder and with any other CrossBorder employees' contracts with CrossBorder.

(d) Attorneys' fees and costs;

(e) Pre- and post- judgment interest; and

(f) Such other and further relief as the Court deems just and proper.

4828-1241-5936

Respectfully submitted,

Dated: June 25, 2020

**PILLSBURY WINTHROP SHAW
PITTMAN LLP**

By:    */s/ Kenneth W. Taber*
       Kenneth W. Taber
       Matthew Stockwell
       Brian L. Beckerman
       31 West 52nd Street
       New York, NY 10019-6131
       Tel: (212) 858-1000
       Fax: (212) 858-1500
       kenneth.taber@pillsburylaw.com
       matthew.stockwell@pillsburylaw.com
       brian.beckerman@pillsburylaw.com

       Paula M. Weber (*pro hac vice forthcoming*)
       Four Embarcadero Center, 22nd Floor
       San Francisco, CA 94111-5998
       Tel:  (415) 983-1000
       Fax:  (415) 983-1200
       paula.weber@pillsburylaw.com

       *Attorneys for Plaintiffs CrossBorder
       Solutions, Inc. and Cross Border
       Transactions, LLC d/b/a CrossBorder
       Solutions*

24

4828-1241-5936