UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CROSSBORDER SOLUTIONS, INC. and CROSS
BORDER TRANSACTIONS, LLC *d/b/a*
*Crossborder Solutions*,

                                        Plaintiffs,

         -against-

MACIAS, GINI, & O'CONNELL, LLP,

                                        Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __02/23/2022__

No. 20 Civ. 4877 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

This case involves the alleged theft of trade secrets and confidential and proprietary information, including a highly confidential customer list and related information, from Plaintiffs CrossBorder Solutions, Inc. and CrossBorder Transactions, LLC. *d/b/a/* CrossBorder Solutions (collectively "CrossBorder" or "Plaintiffs")[1] by its direct competitor Defendant Macias, Gini, & O'Connell, LLP ("MGO") and other individual defendants.[2]

Presently pending before the Court is CrossBorder's motion for leave to amend its complaint, by which CrossBorder proffers a Proposed Second Amended Complaint ("PSAC," ECF No. 88-1) that (1) supplements its factual allegations based on new information recently learned from a settling individual defendant, (2) adds Sanjay Agarwal—a partner with MGO—as an party defendant, and (3) asserts an additional claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 11961, *et seq.*, against MGO and Agarwal (collectively, "Defendants"). (ECF No. 85.) MGO opposes the motion arguing that the Court lacks personal

---

[1] CrossBorder Transactions, LLC is a subsidiary of CrossBorder Solutions, Inc. (Compl. ¶ 13, ECF No. 1; Am. Compl. ¶ 13, ECF No. 34.)

[2] In its original complaint, CrossBorder named Liga Hoy, Jiaxin "Claire" Song, and Lijun "Maggie" Tian as individual defendants. (ECF No. 1.) To date, these individual defendants have been terminated from this lawsuit after CrossBorder settled all its claims against Tian and concluded arbitration with Hoy and Song. (ECF Nos. 67, 69, 150, 153.)

jurisdiction over Agarwal and that the amendments in the PSAC are futile. (ECF No. 87.) For the following reasons, the Court GRANTS IN PART, DENIES IN PART CrossBorder's motion.

## BACKGROUND

The following facts are taken from CrossBorder's PSAC and are accepted as true and construed in the light most favorable to CrossBorder for purposes of the instant motion.[3]

### I.  Factual Background

CrossBorder is a company that provides technology-driven tax solutions to companies through transfer pricing software. (PSAC ¶ 3.) It has successfully created a niche market for such transfer pricing services, and MGO is a direct competitor in this space. (*Id.*)

Former individual defendants who were employed by CrossBorder, Liga Hoy, Jiaxin "Claire" Song, and Lijun "Maggie" Tian (collectively, the "Former Employees") had access to its highly confidential customer-related information—including CrossBorder's master customer list; client work product; client proposals; signed engagements, detailed information about client current and future needs; client internal corporate structures; and prospect lists (collectively, the "Confidential Information"). (*Id.* ¶¶ 4, 55.) The master customer list, in particular, details for each of CrossBorder's clients: the term and date of CrossBorder's contract with the client; the estimated expiration date of the contract; primary and secondary contacts at the client with phone numbers and email addresses for each; notes about the client's satisfaction with CrossBorder, the potential for upsell opportunities, and the first install date of CrossBorder's work. (*Id.* ¶ 5.) The master customer list also contains the dollar values of CrossBorder's relationship with each of its clients, as well as information from which the pricing of CrossBorder's contract with each client could be derived. (*Id.*)

---

[3] *See Polanco v. NCO Portfolio Mgmt.*, 23 F. Supp. 3d 363, 366 n.1 (S.D.N.Y. 2014) (accepting facts alleged in the plaintiff's proposed amended complaint as true for the purposes of deciding a motion to amend).

Months prior to the termination of her employment at CrossBorder, Hoy solicited other CrossBorder employees to leave CrossBorder with her on multiple occasions. (*Id.* ¶¶ 6, 60, 64, 71, 73–74.) When CrossBorder discovered Hoy's activities, it terminated her employment. (*Id.* ¶¶ 7, 65–66.) Within minutes of her termination, Hoy quickly downloaded the CrossBorder Confidential Information to a personal drive, and asked Song and Tian to collect even more. (*Id.* ¶¶ 7, 67.) Hoy also unlawfully solicited Song and Tian to breach the non-compete clauses in their Employment Agreements with CrossBorder and join her at her new employer, MGO. (*Id.* ¶ 8.) Knowing that those solicitation actions violated Hoy's own CrossBorder Employment Agreement, Hoy instructed Song and Tian to apply to MGO through a generic online application. (*Id.* ¶¶ 9, 75.) Song and Tian then did just that, ultimately resigning from CrossBorder to join MGO at Hoy's urging. (*Id.* ¶ 9.)

MGO and Agarwal hired the Former Employees with the intention to build a transfer pricing practice around them and their CrossBorder clients. (*Id.* ¶ 78.) During Tian's interview, Agarwal expressly told Tian that she should bring her clients from CrossBorder to MGO. (*Id.* ¶ 79.) When Tian expressed concern about the non-competition obligation in her Employment Agreement with CrossBorder, Agarwal told Tian not to worry, that MGO's team of lawyers would "have her back." (*Id.*) He urged her to do everything she could to help develop business for MGO. (*Id.* ¶ 10.) At that time, upon information and belief, Agarwal was fully aware of the non-compete restrictions in Tian's Employment Agreement with CrossBorder because he had already seen Hoy's essentially identical Employment Agreement with CrossBorder. (*Id.* ¶ 80.)

Before officially becoming MGO employees, Tian and Song both effectively acted as "undercover agent[s]" for Agarwal and MGO. (*Id.* ¶¶ 11, 14.) They conveyed the CrossBorder Confidential Information to MGO through Hoy and stole it for use by Hoy, Agarwal, and MGO.

(*Id.* ¶¶ 11, 14, 68–70, 76, 87.) During Tian's second day of employment at MGO, Hoy asked Tian for the stolen CrossBorder master customer list to use it the next day at an MGO business development meeting with Agarwal and senior management. Tian responded by emailing Hoy the CrossBorder master customer list using the MGO email system. (*Id.* ¶¶ 12, 83, 90–91.)

After Hoy relayed that information from the master customer list to Agarwal and MGO's business development team, MGO aggressively used that stolen information to target companies whose contracts with CrossBorder were soon expiring—*i.e.*, the companies most readily susceptible to being converted into MGO clients. (*Id.* ¶ 13.) Armed with a detailed knowledge of CrossBorder's client base, as provided by the master customer list, Hoy, Song, Agarwal, and MGO solicited CrossBorder clients, seeking to have them switch to MGO. This included sending a mass invitation to an MGO transfer pricing client seminar. (*Id.* ¶¶ 15, 93–95.) MGO, acting through Hoy and Agarwal, held follow up calls with numerous CrossBorder clients and sent formal work proposals as well. (*Id.* ¶ 100.)

In June 2020, a CrossBorder client informed CrossBorder that Hoy and Tian, while working for MGO, had repeatedly contacted that client to solicit its business. The client also informed CrossBorder that it had received a communication from MGO announcing Hoy and Song's arrival at MGO. (*Id.* ¶ 103.) After learning Defendants had solicited that confidential client's business, CrossBorder sent cease and desist letters to the Former Employees and MGO, on or about June 19, 2020. But those letters yielded no substantive responses, nor any of the assurances the letters requested. (*Id.* ¶ 104.)

## II. Procedural Background

On June 25, 2020, CrossBorder commenced the instant action against the Former Employees, asserting claims for breach of contract, tortious interference with contract, misappropriation of trade secrets and confidential and proprietary information, violations of the

Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836, *et seq.*, breach of common law duty of loyalty, conversion, and injunctive relief. (Compl., ECF No. 1.) On June 26, 2020, the Court entered Plaintiffs' requested temporary restraining order (ECF No. 16), which the Court converted into a preliminary injunction on July 30, 2020, (ECF No. 56). On July 16, 2020, CrossBorder filed an amended complaint adding MGO as an additional defendant and asserting claims for tortious interference with contracts and business relationships, misappropriation of trade secrets and confidential and proprietary information, violations of the DTSA, and injunctive relief against all defendants. (Am. Compl., ECF No. 34.) On August 24, 2020, MGO filed its answer to the amended complaint. (ECF No. 66.) On August 24, 2020, CrossBorder voluntarily dismissed, with prejudice, all of its claims against Tian after reaching settlement. (ECF No. 67.) Tian was terminated from the instant action two days later. (ECF No. 69.)

On September 4, 2020, CrossBorder filed a letter requesting a pre-motion conference to obtain leave to file its SAC, based on its interview with Tian. (See ECF No. 71). After the Court granted CrossBorder leave to file its motion and issued a briefing schedule, (ECF No. 82), the parties filed their respective briefing on December 16, 2020: CrossBorder its notice of motion (ECF No. 85), memorandum of law in support ("Motion," ECF No. 86), a declaration with accompanying exhibits—including the PSAC—some of which are redacted (Taber Decl., ECF No. 88), and its reply ("Reply," ECF No. 90); and MGO its response in opposition ("Response in Opposition," ECF No. 87).

While the instant motion remained pending, on November 10, 2021, CrossBorder voluntarily dismissed, with prejudice, all of its claims against Hoy and Song after concluding arbitration. (ECF No. 150.) Hoy and Song were terminated on February 23, 2022. (ECF No. 153.)

**LEGAL STANDARD**

If a party seeks leave to amend a pleading, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Although the standard is lenient, "[r]easons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1963)). Leave to amend may also be denied "on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010) (quoting *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110–11 (2d Cir. 2001)). In other words, "[a]n amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. IBM.*, 310 F.3d 243, 258 (2d Cir. 2002). Thus, a court should deny a motion to amend if it does not contain enough factual allegations, accepted as true, to state a claim for relief that is "plausible on its face" or to demonstrate standing to bring the claim. *Riverhead Park Corp. v. Cardinale*, 881 F. Supp. 2d 376, 379 (E.D.N.Y. 2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

**DISCUSSION**

By its motion, CrossBorder argues that the Court should grant it leave to file its PSAC because (1) the proposed amendments are not futile because the Court has personal jurisdiction over Agarwal, and CrossBorder states a valid RICO claim against Defendants, (Mot. at 14–28); (2) CrossBorder has proceeded in good faith and without undue delay because the amendments resulted from its due diligence in interviewing Tian after reaching settlement with her, (*id.* at 28–

29); and (3) the amendments will not unduly prejudice Defendants because discovery is still ongoing and summary judgment motions have yet to be filed, (*id.* at 29–30).

In opposition, MGO does not dispute either that CrossBorder has proceeded in good faith and without undue delay, or that the amendments will not unduly prejudice Defendants.[4] Instead, MGO contends that the proposed amendments in the PSAC are futile because (1) CrossBorder fails to plead sufficient facts to state a valid RICO claim against MGO or Agarwal, (Resp. in Opp'n at 7–17); and (2) the Court lacks personal jurisdiction over Agarwal with respect to any of the PSAC's asserted claims against him, (*id.* at 17–18).[5]

Accordingly, the Court need only analyze whether the amendments in the PSAC are futile. The Court will first address whether it has personal jurisdiction over Agarwal, and then whether CrossBorder sufficiently pleaded a RICO claim against Defendants in the PSAC.

## I.   The Court has personal jurisdiction over Agarwal

In arguing the futility of the PSAC, MGO avers that Agarwal is a California resident who resides and works in California, and thus, is not subject to personal jurisdiction in New York. (Resp. in Opp'n at 17.) Further, MGO contends that the PSAC's conclusory allegations on CrossBorder's RICO claim fail to justify allowing the Court to exercise personal jurisdiction over Agarwal. (*Id.* at 18.)

---

[4] Nowhere in its response in opposition does MGO address whether CrossBorder met these factors in the Rule 15(a) analysis. *See Anti-Monopoly, Inc., v. Hasbro, Inc.,* 958 F. Supp. 895, 907 n. 11 (S.D.N.Y. 1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue."), *aff'd,* 130 F.3d 1101 (2d Cir. 1997).

[5] MGO's wording on this argument is unclear. MGO appears to argue that (1) the Court lacks personal jurisdiction over Agarwal with respect to any of the PSAC's asserted claims against him; and (2) CrossBorder fails to sufficiently allege any claims against Agarwal because it merely asserts conclusory allegations with respect to each of the other claims in the PSAC. (*See id.* at 17 ("Agarwal should not be added as a Defendant because the proposed SAC alleges no other valid claim against him and this Court lacks personal jurisdiction.") To the extent that MGO intended to argue the latter, the Court will not review such argument on the merits because it is not properly briefed.

But CrossBorder argues that the Court has personal jurisdiction over Agarwal under New York's long-arm jurisdiction statute. (Mot. at 15.) First, CrossBorder argues that Agarwal transacted business in New York by conducting the Former Employees' telephonic job interviews, extending them offers to work at MGO, and by using the Confidential Information that the Former Employees stole from CrossBorder. (*Id.* at 15–17.) It further avers that Agarwal's tortious acts caused injury to CrossBorder in New York because he solicited the Former Employees to breach their employment contracts with CrossBorder and encouraged them to bring its clients over to MGO. (*Id.* at 17–18.) And finally, CrossBorder also argues that the Court exercising jurisdiction over Agarwal would not violate due process because CrossBorder has sufficiently alleged that his conduct was purposefully directed to New York and comports with notions of fair play and substantial justice. (*Id.* at 18–19.) After due consideration, the Court agrees with CrossBorder.

"District courts resolving issues of personal jurisdiction must . . . engage in a two-part analysis." *Grand River Enterprises Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir. 1999)). First, a district court must determine whether, under the laws of the forum state (New York in this case), there is jurisdiction over the defendant. *Id.* (citing *Bank Brussels Lambert,* 171 F.3d at 784). "Second, [it] must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements." *Id.* (quoting *Bank Brussels Lambert,* 171 F.3d at 784).

Under New York's long-arm jurisdiction statute, New York courts may exercise personal jurisdiction over "any non-domiciliary . . . who in person or through an agent: 1. transacts any business within the state . . . ; or 3. commits a tortious act without the state causing injury to person or property within the state . . . if he . . . (ii) expects or should reasonably expect the act to have

consequences in the state and derives substantial revenue from interstate or international commerce[.]" CPLR § 302(a).

Section 302(a)(1) provides that "the overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012). To determine whether a defendant is subject to long-arm "transacting business" jurisdiction under § 302(a)(1), the Court must determine whether (1) the defendant transacted any business in New York; and (2) the cause of action arises from such a business transaction. *See Licci*, 673 F.3d at 60.

A non-domiciliary purposefully avails himself of the privilege of conducting business in New York when he "seeks out and initiates contact with New York, solicits business in New York, and establishes a continuing relationship." *D & R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 298 (N.Y. 2017) (quoting *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (N.Y. 2014)). A plaintiff's claim is sufficiently related to the defendant's purposeful transaction with New York where there is "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." *D & R Glob.*, 29 N.Y.3d at 299 (internal quotation marks omitted). "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, . . . [e]ven though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) (citations omitted).

Section 302(a)(3) also provides that personal jurisdiction is appropriate over a non-domiciliary when "defendant's tortious act causes 'injury to person or property within the state,'

the defendant 'expects or should reasonably expect the act to have consequences in the state,' and the defendant 'derives substantial revenue from interstate or international commerce.'" *Mfg. Tech., Inc. v. Kroger Co.*, No. 06 CIV. 3010 (JSR), 2006 WL 3714445, at *1 (S.D.N.Y. Dec. 13, 2006) (quoting CPLR § 302(a)(3)(ii)).

Here, contrary to MGO's assertions, the PSAC provides sufficient, specific allegations indicating that personal jurisdiction over Agarwal is proper under § 302(a)(1) and (3). Construing it in the light most favorable to CrossBorder, the PSAC alleges that Agarwal personally conducted Tian's telephonic job interviews for his MGO employment while he was still working for CrossBorder in New York. (PSAC ¶¶ 10, 77, 79.) It also alleges that Agarwal extended offers of employment in MGO, which were ultimately accepted, to Song and Tian while they were still working for CrossBorder in New York with valid non-compete agreements. (*Id.* ¶¶ 78–82.) The PSAC further claims that he did so with full knowledge of their restrictive covenants with a company which has its principal place of business in New York—covenants he allegedly tortiously induced them to breach. (*Id.* ¶¶ 80, 135–37, 139, 141, 145–46, 151). Agarwal also allegedly encouraged the theft of trade secrets and confidential and proprietary information of a company which has its principal place of business in New York. (*Id.* ¶¶ 2, 118, 128, 154). And finally, the PSAC also alleges that Agarwal used the master customer list, stolen from CrossBorder in New York as soon as Tian joined MGO, to target and contact CrossBorder's customers. (*Id.* ¶¶ 13, 15, 93–95.)

Hence, the Court agrees with CrossBorder that Agarwal's alleged conduct satisfies § 302(a)(1). (*See* Mot. at 17 (citing *Winner v. Tryko Partners, LLC*, 333 F. Supp. 3d 250, 259 (W.D.N.Y. 2018) (finding personal jurisdiction over nondomiciliary defendants pursuant to CPLR § 302(a)(1) because, *inter alia*, "[w]here an out-of-state employer contemplates and creates an

ongoing relationship with a New York employee to further its own business in the state, such proactive efforts may suffice as 'transacting business' within the purview of New York's long-arm statute"); *Williams v. Preeminent Protective Servs., Inc.*, 81 F. Supp. 3d 265, 271 (E.D.N.Y. 2015) (personal jurisdiction established under CPLR § 302(a)(1) when nondomiciliary defendants hired employee who worked in New York, sent her emails instructing her solicitation of clients, and paid her a commission).)

The Court further agrees that Agarwal's alleged conduct also satisfies § 302(a)(3). *See, e.g.*, *Kroger Co.*, 2006 WL 3714445 (finding personal jurisdiction over defendants who allegedly stole intellectual property and trade secrets from a New York-based plaintiff, who could have reasonably expected the consequences of their actions to be felt in New York, and who would derive substantial revenue from interstate commerce); *Four Seasons Solar Prod. Corp. v. Solarium Sys., Inc.*, No. 86 Civ. 3468, 1987 WL 4818 (E.D.N.Y. May 6, 1987) (finding personal jurisdiction over defendant who allegedly stole confidential information and trade secrets that affected plaintiff's New York sales and customers); *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 205 (N.Y. 1978) (enjoining defendant, plaintiff's former employee, to prevent him from divulging trade secrets that he acquired while working in New York).

Moreover, exercising jurisdiction over Agarwal under New York's long-arm statute is consistent with federal due process requirements. In determining whether the exercise of jurisdiction comports with due process, courts consider: "(1) the minimum contacts inquiry, and (2) the reasonableness inquiry." *Allied Dynamics Corp. v. Kennametal, Inc.*, 965 F. Supp. 2d 276, 296 (E.D.N.Y. 2013). The minimum contacts inquiry examines whether the defendant's conduct was "purposefully directed" toward the forum state. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010). The reasonableness inquiry requires that "the assertion of

jurisdiction comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable under the circumstances of [this] case." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir. 1999) (internal quotations omitted).

Here, the exercise of jurisdiction over Agarwal fully comports with notions of fair play and substantial justice because CrossBorder has sufficiently alleged that he purposefully directed his conduct to New York. Specifically, Agarwal's conduct included (1) recruiting two of the Former Employees, both of whom worked in New York, and one of whom also lived in New York; (2) pursuing CrossBorder clients in New York; and (3) using the CrossBorder Master List, stolen from New York, to do so. Therefore, the Court concludes that personal jurisdiction properly exists over Agarwal in this case.[6]

## II.  CrossBorder's proposed RICO claim as alleged against Defendants is futile

Next, MGO argues that CrossBorder's "purported RICO claim against [Defendants] is nothing more than a repackaging of its allegations of ordinary unfair competition against the Individual Defendants." (Resp. in Opp'n at 6.) MGO avers that the proposed RICO claim is futile because CrossBorder fails to plead facts sufficient to show that Defendants engaged in "racketeering"—much less a "pattern" of such activity—as the PSAC fails to allege two separate predicate acts and establish the requisite "continuity" required to successfully allege a RICO claim. (*Id.* at 7–13.) MGO further avers that the PSAC fails to adhere to RICO's "distinctness requirement" because it appears to contend that Agarwal and MGO "are both the culpable persons and enterprise [under RICO] simultaneously." (*Id.* at 13–16.) Finally, MGO contends that the

---

[6] To be sure, "[a] plaintiff must plead personal jurisdiction with respect to each claim asserted." *See Sunward Elecs., Inc. v. McDonald,* 362 F.3d 17, 24 (2d Cir. 2004). But here, all of CrossBorder's causes of action against MGO and Agarwal in the PSAC derive from the same alleged transactions and occurrences—namely, soliciting Hoy, Song, and Tian to leave CrossBorder in breach of their non-compete agreements, urging them to steal the Confidential Information, and using the Confidential Information to solicit the business of CrossBorder's clients. In other words, based on the SAC's proposed allegations mentioned above, CrossBorder sufficiently pleads personal jurisdiction with respect to all claims asserted.

PSAC fails to allege facts showing an injury resulting from the alleged substantive RICO violation because it fails to allege an actual, quantifiable financial loss. (*Id.* at 16–17.)

But CrossBorder counters that the proposed RICO claim is not futile because the PSAC sufficiently pleads that Defendants were involved in two predicate racketeering acts: wire fraud and theft of trade secrets. (Reply at 6–9.) CrossBorder also argues that these predicate acts establish the requisite "continuity" under RICO because Defendants schemed to steal, and actually stole, its Confidential Information, repeatedly used that information over a three-month period to systematically solicit CrossBorder's clients, and, had the Court not enjoined them, they would have continued their racketeering activity. (*Id.* at 9–11.) Further, CrossBorder argues that the PSAC's allegations adhere to RICO's "distinctness requirement" because the alleged "enterprise" is not MGO itself, but rather, Song and Tian (while they were still CrossBorder employees) and Agarwal and Hoy (as agents of MGO). (*Id.* at 11–12.) And CrossBorder moreover argues that, with respect to damages, it has incurred, and continues to incur, hundreds of thousands of dollars in attorneys' fees in securing the temporary restraining order and preliminary injunction against Defendants and the Former Employees. (*Id.* at 12–13.)

After due consideration, the Court concludes that the proposed RICO claim as alleged is futile because the PSAC fails to sufficiently plead such type of claim against Defendants. Specifically, CrossBorder fails to adequately plead the open-ended continuity of Defendants' alleged racketeering activities.

To demonstrate a RICO violation, a plaintiff must plausibly allege "that a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participating in an enterprise, the activities of which affected interstate or foreign commerce." *Lynch v. Amoruso*, 232 F. Supp. 3d 460, 466 (S.D.N.Y. 2017) (quoting *Defalco v.*

*Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)). Thus, a plaintiff must allege "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to the business or property as a result of the RICO violation." *Lundy v. Cath. Health Sys. Of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (internal quotations omitted).

> *A.*     *Predicate Acts*

To recover under RICO, a plaintiff must show that defendants engaged in "racketeering activity." 18 U.S.C. § 1961(5). "'Racketeering activity,' in turn, is defined to 'encompass dozens of state and federal offenses, known in RICO parlance as predicates.'" *Equinox Gallery Limited v. Dorfman*, 306 F. Supp. 3d 560, 571 (S.D.N.Y. 2018) (quoting *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2096 (2016)). As mentioned above, CrossBorder alleges wire fraud, 18 U.S.C. § 1341, and theft of trade secrets, 18 U.S.C. § 1832, both of which are predicate acts under RICO. *See* 18 U.S.C. § 1961(1).

> 1.     Wire Fraud

A plaintiff who alleges racketeering activity based on mail or wire fraud must prove "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *United States v. Greenberg*, 835 F.3d 295, 305 (2d Cir. 2016) (quoting *United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015)). Additionally, a civil RICO claim based on predicate acts that involve fraud must "satisfy the requirement that, '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *Lundy*, 711 F.3d at 119 (predicate acts of mail and wire fraud are subject to [Federal Rule of Civil Procedure] 9(b)). To plead fraud with particularity, the "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the

statements were made, and identify those responsible for the statements." *Id.* (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989)).

Here, construing it the light most favorable CrossBorder, the PSAC sufficiently pleads the RICO predicate act of wire fraud with particularity. In a nutshell, the PSAC alleges that Defendants began a scheme to steal the Confidential Information from CrossBorder for its own economic benefit using telephones and their email addresses. (PSAC ¶¶ 160–65.)

But with particularity, on March 27, 2020, Agarwal "specifically instructed Tian [by telephone] to do whatever she could to develop business for MGO." (*Id.* ¶ 81.) A few days later, Hoy, who was also employed by MGO, contacted Tian by telephone and "told [her] that she should do anything possible to develop business for Defendant MGO, including bringing CrossBorder clients to MGO, and that MGO's legal team would support her." (*Id.* ¶ 86.) Hoy "intentionally and wrongfully," by telephone, text messages and emails, "solicited Song and Tian to misappropriate trade secrets and confidential and proprietary information belonging to CrossBorder for MGO's benefit." (*Id.* ¶ 150.) Further, "Agarwal and MGO had knowledge of, encouraged and facilitated . . . Song and Tian's misappropriation of trade secrets and confidential and proprietary information belonging to CrossBorder, for MGO's benefit." (*Id.* ¶ 151.) That included Tian's electronic theft of the CrossBorder master customer list. (*Id.* ¶ 83.) "Agarwal and MGO's intent in hiring Hoy, Song and Tian was to build a transfer pricing practice around them and their CrossBorder clients," (*id.* ¶ 78), as confirmed by MGO's aggressive client solicitation campaign—conducted by emails, text messages and telephone, (*id.* ¶¶ 93, 97–100).

"Tian [then] provided that Confidential Information to [] Hoy, at her request, by telephone and through a series of screenshots she sent to [] Hoy, via text messages showing communications with various CrossBorder clients." (*Id.* ¶ 88.) On March 30, 2020, three days after Agarwal

"instructed Tian to do whatever she could to develop business for MGO," (*id.* ¶ 81), Tian also "downloaded, onto a personal thumb drive, a number of files containing CrossBorder Confidential Information for future use by Defendants Hoy, Agarwal and MGO," (*Id.* ¶ 83.) "Tian obliged, sending the [master customer list] to Defendant Hoy by e-mail, with Hoy and Tian using their respective MGO e-mail accounts to transfer this stolen property." (*Id.* ¶ 91.) Hoy then shared portions of the master customer list with Agarwal, who then shared it with Juline Cohen, another MGO employee. (*See id.* ¶ 92.) "Through e-mails sent by Hoy, Agarwal, Ms. Cohen and Tian, MGO contacted at least 35 such CrossBorder clients, soliciting their business for MGO." (*Id.* ¶ 98.) Hence, the Court concludes that the PSAC's allegations regarding Defendants' alleged wire fraud satisfy the particularity requirements under Rule 9(b).

### 2.    Theft of Trade Secrets

Under the DTSA, the criminal theft of trade secrets section, 18 U.S.C. § 1832, is violated when:

> Whoever, with intent to convert a trade secret . . . to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly—
>
> (1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information;
>
> (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, upload, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information;
>
> (3) receives, buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization[.]

*Id.* § 1832(a)(1)–(3); *see also Intertek Testing Servs., N.A., Inc. v. Pennisi*, 443 F. Supp. 3d 303, 339 (E.D.N.Y. 2020).

Information is a "trade secret" if (1) "the owner . . . has taken reasonable measures to keep such information secret;" and (2) "the information derives independent economic value . . . from

not being generally known to, and noy being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *Id.* 18 U.S.C. § 1839(3).

Here, construing it in the light most favorable to CrossBorder, the PSAC also sufficiently pleads the RICO predicate act of theft of trade secrets. First, the PSAC alleges that CrossBorder's Confidential Information, particularly the master customer list, is a protectible trade secret. (PSAC ¶¶ 49–52; 123–26.) Second, the PSAC alleges that the Former Employees stole "CrossBorder's trade secrets for [] MGO and Agarwal's gain, without regard to CrossBorder's rights, and without compensation, permission, or license from CrossBorder," (*see id.* ¶ 127.) And third, "Agarwal and MGO had knowledge of, and indeed encouraged and facilitated, the Former Employees' misappropriation of CrossBorder trade secrets and confidential and proprietary information, thereafter utilizing such information to solicit CrossBorder's clients." (*Id.* ¶ 128.)

As such, the Court concludes that the PSAC sufficiently pleaded the two requisite predict acts for a RICO violation. *See, e.g.*, *Kelco Constr., Inc. v. Spray in Place Sols., LLC*, No. 18-CV-5925(SJF)(SIL), 2019 WL 4467916, at *5 (E.D.N.Y. Sept. 18, 2019) (concluding that plaintiff had sufficiently alleged predicate acts of wire fraud and theft of trade secrets supporting RICO claim because it alleged, in part, that defendant-former employees stole confidential and proprietary information, including customer lists, business development strategies, and business negotiations, to establish and operate a competing business).

### B.      Pattern of Racketeering Activity

To meet the "pattern of racketeering activity" element, a plaintiff must allege that the predicate acts have "continuity plus relationship which combines to produce a pattern." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (citation omitted). This continuity requirement "can be satisfied either by showing a 'closed-ended' pattern—a series of related predicate acts extending

over a substantial period of time—or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citations omitted).

MGO contends that CrossBorder has not adequately pleaded either closed-ended or open-ended continuity of the alleged racketeering acts. (Resp. in Opp'n at 11–13.) While CrossBorder agrees that closed-ended continuity is inapplicable here, it argues that the PSAC sufficiently alleges open-ended continuity of the alleged wire fraud and theft of trade secrets. (Reply at 9–11.) Hence, the Court will only analyze whether the PSAC's allegations sufficiently pleads an open-ended continuity RICO claim.

        1.     <u>Open-Ended Continuity</u>

"To satisfy open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999). "[W]here the enterprise primarily conducts a legitimate business . . . there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Id.*; *see also H.J. Inc.*, 492 U.S. at 230 ("Otherwise, it must be shown that the predicates establish a threat of long-term racketeering activity—for example, because the predicates themselves involve a distinct threat of such activity; because they are part of the regular way of doing business for an ongoing entity such as a criminal association or legitimate business; or because they are a regular means of conducting or participating in an ongoing RICO enterprise.")

Here, the Court agrees with Defendants that CrossBorder fails to sufficiently plead open-ended continuity. First, it is well established law that fraud does not fall within the "inherently unlawful" category of predicate acts so as to imply a threat of continued criminal activity. *See, e.g.*, *Westchester Cnty. Independence Party v. Astorino*, 137 F. Supp. 3d 586, 611 (S.D.N.Y. 2015); *Int'l Bhd. Of Teamsters v. Carey*, 297 F. Supp. 2d 706, 715 (S.D.N.Y. 2004) ("fraud (the object of which is by definition to obtain money or property from others) has been held not to be 'inherently unlawful' in the RICO continuity context"); *see also World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 516 (S.D.N.Y. 2007) ("While embezzlement, extortion, bribery, and money laundering are in pursuit of inherently unlawful goals, fraud is not.").

Second, none of the circumstances here present suggests that Defendants are or were likely to engage in future racketeering acts because the alleged wrongdoings were directed at a single victim—CrossBorder—and had a single purpose: to steal CrossBorder's clients. *See Medinol Ltd. v. Boston Scientific Corp.*, 346 F. Supp. 2d 575, 613 (S.D.N.Y. 2004) ("Courts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of a closed or open pattern of continuity.") (citing *Lefkowitz v. Bank of New York*, No. 01 Civ. 6252, 2003 WL 22480049, at *8 (S.D.N.Y. Oct. 31, 2003).

And third, above all, CrossBorder misapprehends what constitutes "racketeering activity" under RICO and conflates the *criminal* offense of *theft* of trade secrets with the *civil* cause of action for *misappropriation* of trade secrets. The RICO statute lists with specificity the precise criminal violations that constitute racketeering activity. *See* 18 U.S.C. § 1961(1). "Congress added theft of trade secrets to that list with the passage of the [DTSA]." *ESPOT, Inc. v. MyVue Media*, LLC, 492 F. Supp. 3d 672, 694 (E.D. Tex. 2020). As noted above, section 1832 of the DTSA criminalizes

19

the theft of trade secrets. *See* 18 U.S.C. § 1832. Hence, to date, the RICO statute defines "racketeering activity" as, among other things, "any act *indictable*" under 18 U.S.C. §§ 1831, 1832. *Id.* § 1961(1)(B) (emphasis added); *see also* Black's Law Dictionary Online, *Indictable*, https://thelawdictionary.org/indictable/ (last visited Feb. 22, 2022) ("Proper or necessary to be prosecuted by process of Indictment.")

But at the same time, the DTSA also contains a section providing a federal private right of action for misappropriation of trade secrets. *See* 18 U.S.C. § 1836. This section states that "[a]n owner of a trade secret that is *misappropriated* may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." *Id.* § 1836 (emphasis added). The DTSA defines the term "misappropriation" as, among other things, the "disclosure or *use* of a trade secret of another without express or implied consent . . . ." *Id.* § 1839(5)(B) (emphasis added).

Put into context, while a plaintiff may bring a civil claim for the "use" of a stolen trade secret under § 1836, such "use" cannot constitute a predicate act under RICO because it is not an indictable criminal offense such that it falls under the definition of "racketeering activity" under the statute. Notably, section 1832 of the DTSA—criminalizing the theft of trade secrets— does not include the term "misappropriate" nor the term "use." Instead, the plain language appears to invoke the ways in which a person or entity can take or receive a trade secret, not use it once taken. *See United States v. Balde*, 943 F.3d 73, 81 (2d Cir. 2019) ("Where the plain meaning of the text is clear, our inquiry 'generally end[s] there.'" In sum, the "use" of a trade secret would not be indictable under § 1832 because it is not one of the acts described in this provision as a criminal offense.

It follows then, that since "the criminal statute is limited to the point in time that a trade secret falls into unauthorized hands, then the ongoing use of the trade secrets once obtained cannot be a predicate act to establish a threat of continued criminal activity." *ESPOT*, 492 F. Supp. 3d at 694. Thus, CrossBorder "cannot rely on allegations that . . . Defendants are using its trade secrets, and will continue to do so, to establish an open-ended pattern of racketeering activity." *Id.* Therefore, the Court concludes that the PSAC's proposed RICO claim against Defendants is futile because CrossBorder has failed to adequately plead such type of claim.

As a final matter, the Court notes that CrossBorder filed two additional letter motions after the parties finished submitting their respective briefing for the instant motion. (ECF Nos. 94 & 95.) Both letter motions sought leave to file, under seal and for *in camera* review, certain discovery that purportedly supported CrossBorder's proposed RICO claim in the PSAC. Specifically, these documents purport to include excerpts from the alleged stolen Confidential Information and emails showing that Agarwal received the Confidential Information from Hoy for MGO's use.

To begin, for purposes of the instant motion, the Court may only consider "the documents that are asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2017). Thus, even if it were to grant both letter motions, the Court still may not consider any of the excerpts CrossBorder seeks to file under seal and for *in camera* review. And moreover, even if the Court could consider them, to the extent that these excerpts purportedly support the PSAC's RICO claim against Defendants, the proposed RICO claim as alleged nonetheless fails because these excerpts fail to override the reason why such claim fails: the ongoing "use" of stolen trade secrets cannot be a predicate act to establish a

threat of continued criminal activity. Accordingly, the Court denies CrossBorder's both letter motions.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART, DENIES IN PART Plaintiffs' motion for leave to amend. (ECF No. 85.) The Court DENIES the motion as to its request to assert the proposed RICO claim as alleged against Defendants Agarwal and Macias, Gini, & O'Connell, LLP. The Court GRANTS the motion as to its request to add Defendant Agarwal as a party defendant and to assert all other remaining claims in the proposed Second Amended Complaint against Defendants Agarwal and Macias, Gini, & O'Connell, LLP. Plaintiffs may file a Third Amended Complaint that comports with this Opinion and Order on or before March 16, 2022. The Court further DENIES Plaintiffs' letter motions seeking to file, under seal and for *in camera* review, certain discovery that purportedly supports Plaintiffs' futile RICO claim. (ECF Nos. 94 & 95.) The Court moreover DIRECTS the parties to contact U.S. Magistrate Judge Judith C. McCarthy no later than March 1, 2022.

The Clerk of Court is finally directed to terminate the motions at ECF No. 85, 94, and 95.

Dated:  February 23, 2022
      White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge